ARTHUR A. BLUNT *v.* MONTPELIER & WELLS RIVER RAILROAD.

May Term, 1915.

Present:   MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed May 22, 1915.

*Carriers of Passengers—Injury to Passenger—Suit Case Falling From Rack—Issues and Proof—Extent of Injury—Opinion Evidence—Admissions by Agent—Conductor's Admission of Negligence—Questions for Jury—Damages—Interest— Exception to Charge—Question Reserved.*

In an action by a passenger against a railroad company for personal injury, where the declaration alleged injury in and about his head, neck, shoulders, spine, and other parts of his body, soreness, lameness, and nervous and spinal troubles, and a medical witness testified that the use of an arm might be easily affected by such an injury as plaintiff received, through the shock to the nerves that cause motion and sensation, evidence that plaintiff's arm felt numb, and that at first he was unable to pick up anything requiring a grasp, was within the injuries covered by the declaration.

In an action for personal injuries, evidence of pains in parts of the body other than those specified in the declaration is admissible, provided such pains are referred to the alleged injuries.

In a passenger's action against a railroad company for injury from the falling of a suit case from the rack, his testimony that the suit case was not placed there after he sat down, based on the fact that he did not see, hear, or feel, anything being done in connection with the suit case, was not objectionable as opinion evidence, for evidence of that character shows the knowledge that the witness obtains from the non-observance of what he would have been likely to have observed in the circumstances had it existed or occurred.

In a passenger's action against a railroad company for injury from the falling of a suit case from the rack, where plaintiff testified on cross-examination that he told the conductor that he didn't care about the breaking of his hat, nor want pay for it, but would let him know if plaintiff was badly hurt as he thought he was, it was error to allow plaintiff, on redirect examination, to testify that, at the

same time and as part of the same talk, but not immediately after the accident, the conductor said that the conductor should have seen that the suit case was not in the rack, and that he wanted to buy plaintiff a new hat, as the conductor had no authority to bind defendant by an admission of negligence, and the two statements, although made in the same conversation and with reference to the same occurrence, were so wholly distinct that the introduction of the one did not make the other admissible.

In a passenger's action against a railroad company for injury from the falling of a suit case from the rack, evidence *held* to make defendant's negligence a question for the jury.

In a passenger's action against a railroad company for injury from the falling of a suit case, where the court instructed the jury to include in their verdict such sum as plaintiff was entitled to for delay, not to exceed six per cent. simple interest, to which plaintiff excepted generally, whereupon the court instructed that this recovery was by way of *damages, and was not strictly interest,* plaintiff cannot object, on review, that the questioned instruction was a positive direction to do what rests wholly in the discretion of the jury.

CASE for negligence.   Plea, the general issue.   Trial by jury at the June Term, 1914, Caledonia County, *Butler, J.,* presiding.   Verdict and judgment for the plaintiff.   The defendant excepted.   The opinion states the case.

*H. C. Shurtleff* for the defendant.

*Porter, Witters & Harvey,* and *F. S. Rogers,* for the plaintiff.

MUNSON, C. J.   The plaintiff, while riding in a passenger coach of the defendant, was injured by a suit case, which fell, upon his head and neck from a rack which was attached to the side of the car and extended over his seat.

The declaration alleges that the plaintiff was injured in and about his head, neck, shoulders, spine and other parts of his body, and thereby became sore, lame, disordered, and affected with nervous and spinal troubles.   The plaintiff was permitted to testify that his left arm had at times a feeling of arrested circulation, or of numbness, and that at first he was unable to pick up anything

that required a grasp.   Defendant claims that these were special damages not covered by the declaration; but we think nothing more was needed by way of allegation to make the evidence admissible.   In an action for personal injuries, evidence is admissible of pains in other parts of the body than those specified in the declaration, provided such pains are referred to the injuries which are set out in the declaration. Vt. Dig. 997, pl. 112; *Thompson* v. *National Exp. Co.*, 66 Vt. 358, 29 Atl. 311; *Lewis* v. *Crane,* 78 Vt. 216, 224, 62 Atl. 60.   The medical witness testified that the use of the arm might easily be affected by such an injury as the plaintiff received, through the shock to the nerves that cause motion and sensation; that numbness of the arm would usually result from a concussion on the back of the neck, not because the blow directly struck the nerve, but because it affected the whole cerebral structure.

The rack in question was about thirty inches long and six inches deep, constructed with flaring side and ends, and of such breadth that the upper line of the front was eight or nine inches from the side of the car.   It was about four feet above the seats, and so located that half its length was over the plaintiff's seat, and half over the open space in front of the seat behind.   The suit case was somewhere from twenty-four to thirty inches long, and from twelve to fifteen inches broad.   When the plaintiff entered the car he placed his bags on the floor in front of his seat, and sat down about in the middle of the seat, and turned to speak with an acquaintance who was one or two seats back on the opposite side.   After some conversation the plaintiff turned around and commenced to read his paper, and continued reading until the suit case fell.

The court permitted plaintiff's counsel to inquire of him whether anyone reached up and put the suit case in the rack after he sat down, and he answered ''No.''   It was afterwards made to appear in cross-examination that this answer was based on the fact that the plaintiff did not see, hear or feel anything being done in connection with the suit case.   The defendant treats this as opinion evidence, but we do not so regard it.   Evidence of this character is the knowledge which the witness derives from the non-observance of things which he would have been likely to observe in the circumstances, if they had existed or occurred.   We think the conditions here were such that the fact that the plaintiff did not notice such a movement as would

be required in placing the suit case in the rack, was some evidence tending to show that it was not placed there after he took his seat.

The plaintiff was asked in direct-examination what the conductor said to him at the time as to whether he should have seen and removed the suit case, and after some unreported discussion the question was excluded. The plaintiff was asked in cross-examination what he said to the conductor about his injury—whether he was injured or not— or how badly he was injured; and his reply was: ''I said that I wouldn't care anything about the breaking of my hat, nor should I ask him to pay for that, but I should let him know if I was badly hurt, and I thought by the feeling that I was .in for a severe sickness.'' In redirect examination the plaintiff was asked what the conductor said to him at this same time, as a part of the same talk, as to what he should have done about the suit case. This was asked under a claim that the defendant's introduction of a part of the conversation entitled the plaintiff to have it all; was objected to on the ground that the testimony should be confined to the subject which the defendant inquired about; and was received because the defendant had opened the conversation, and this was explanatory of what the plaintiff said. The answer was this: ''He said that he should have seen that the suit case was not there in the rack.'' The plaintiff was then asked what the conductor said about his hat being broken, and answered: ''He said he wanted to buy me a new hat—says 'We want to buy you a new hat;' to which I replied, 'I don't care anything about the hat unless I am injured,' which I felt that I was.''

The admission of this evidence was error. The conductor had no authority to bind the defendant by admitting his negligence. His statement sustained no relation to the accident that could render it admissible. It was not made in connection with anything then being done, nor with reference to a condition then existing. It had not even the close connection in point of time which has sometimes been held to justify the admission. The transcript of the plaintiff's evidence shows plainly enough that the conversation did not come immediately after the accident. *Blackman* v. *West Jersey etc. R. Co.,* 68 N. J. L. 1, 52 Atl. 370; *Redmon* v. *Metropolitan St. R. Co.,* 185 Mo. 1, 84 S. W. 26, 105 Am. St. 558; *Morse* v. *Consolidated R. Co.,* 81 Conn. 395, 71 Atl. 553; *Williamson* v. *Cambridge R. Co.,* 144 Mass. 149, 10 N. E.

790; *Mobile Light & R. Co.* v. *Baker,* 158 Ala. 491, 48 South. 119.

The evidence was not admissible as explanatory of the plaintiff's part in the conversation. The conductor's offer to pay for the hat explained how the plaintiff came to say what he did, but in no way affected the statement made. The two statements, although made in the same conversation and with reference to the same occurrence, were so entirely distinct that the introduction of one did not make the other admissible. Mr. Wigmore recognizes the difficulty of determining the limit of admissibility in these cases by any formula, but says it is usually defined by saying that all that was uttered at the same time on the same subject is receivable. 3 Wig. Ev. §2119. See also §2094, p. 2825; §2113, p. 2860 (b). The existence and extent of the claimed injuries was one subject, as to which the plaintiff could speak for himself. The defendant's responsibility for those injuries was a different subject, and one concerning which the conductor had no authority to speak for the defendant.

The defendant's motion for a verdict was properly overruled. The plaintiff entered the car at Wells River; and we have seen that his testimony regarding the suit case was evidence tending to show that it was put in the rack before he took his seat. There was also evidence that the conductor passed through the car five times and the trainman twice before the suit case fell. This was enough to afford a basis for the claim that the defendant's servants ought in the exercise of due diligence to have seen and removed the suit case. It could not be said as matter of law that in taking his seat under the rack without observing the suit case, the plaintiff assumed the risk or was guilty of contributory negligence. Nor can the motion be sustained on the ground that there was no evidence tending to show a negligent running of the train. The first four counts charge negligence in the speed of the train only in connection with negligence in leaving the suit case in the rack. The fifth count makes the negligent running of the train the sole ground of recovery, but the case was not submitted to the jury on this ground.

In the opening part of its charge the court said that the defendant was required "to use the highest degree of care respecting its roadbed, machinery and appliances, and in running and operating its train;" and that as regards its passengers it was bound "to use the utmost care and caution which may be

reasonably expected of a careful and prudent man in like cir-
cumstances.'' In its specific instructions subsequently given re-
garding the rack and its use, the court spoke several times of the
duty of the defendant to use the care and prudence of a prudent
man in the circumstances. In a supplemental charge the court
said it was the defendant's duty to transport the plaintiff safely,
using the care and prudence before indicated in the charge; and
that as regards the rack and suit case the defendant was bound to
use the care and prudence of a prudent man in like circumstances,
in view of all the conditions previously stated. The speed of the
train was one of the circumstances to be considered in determin-
ing what prudence required as regards the suit case, but, as the
case was submitted, it made no difference whether the speed shown
was negligent or otherwise. The plaintiff claims that when the
charge is considered as a whole, the preliminary statement of
rules calling for a degree of care more than ordinary shows no
error; but as the case stands it is not necessary to consider this
matter.

The charge permitted a recovery of the amount of the
doctor's bill. There was no statement of any amount, nor of the
charge for a visit, and but a very indefinite statement of the
number of visits. It did not appear that the plaintiff had paid
any bill, or that the doctor had made any charge. It is not
necessary to determine just what is essential as the basis of a
recovery, for the uncertainties existing here will doubtless be
removed on another trial.

The court said to the jury: ''You are also to include in
your verdict such sum as you think the plaintiff is entitled to
for the delay in payment * * * not to exceed six per cent. simple
interest.'' The defendant objects that this was a positive direc-
tion to do something which rests entirely in the discretion of the
jury. The exception taken was as follows: ''We wish to save
the question as to interest being recoverable in a case of this
nature—except to what the court charged regarding interest.''
The court thereupon proceeded to explain that this recovery was
by way of damages, and was not strictly interest; evidently
considering, as well it might, that that was the point of the ex-
ception.

The defendant excepted to certain expressions used by the
court in instructing the jury as to its duty regarding the suit

case, but we do not deem it best to formulate the exact rule of liability in this respect upon a consideration of these exceptions.

*Judgment reversed and cause remanded.*